```
IN THE UNITED STATES DISTRICT COURT
  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
JOSE EDUARDO NUFIO SALAZAR,     )
                                )
              Petitioner,       )
                                )
         v.                     )     1:09CV859
                                )
MR. JONES, Supt. Johnson        )
Correctional,                   )
                                )
              Respondent.       )
```

## MEMORANDUM OPINION AND ORDER

**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 14, 2006, in the Superior Court of Guilford County, Petitioner was convicted at trial of trafficking in marijuana and was sentenced to 25 to 30 months of imprisonment in case 04CRS85511; he appealed the conviction, but the North Carolina Court of Appeals affirmed and the North Carolina Supreme Court denied discretionary review. State v. Salazar, No. COA07-893, 2008 WL 2415974 (N.C. Ct. App. June 17, 2008) (unpublished), disc. review denied, 362 N.C. 513, 668 S.E.2d 779 (2008).

Petitioner next filed a motion for appropriate relief in the trial court, which was denied on April 1, 2009. The Petition initially omits any reference to appellate review of that denial. (Docket Entry 1 at 5.) However, at other places in the Petition, Petitioner alleges that he appealed the denial of his motion for appropriate relief to the North Carolina Court of Appeals. (Id. at

7-9.) Petitioner provides neither citations nor copies of any documentation to substantiate his bare allegations in this regard. (See id.) Respondent states that no record exists of Petitioner ever having sought review of that denial in the North Carolina Court of Appeals. (Docket Entry 5 at 2.) Petitioner next filed his Petition in this Court.

Respondent has filed a Motion for Summary Judgment. (Docket Entry 4.) Despite notice of his right to respond, Petitioner has filed no response. (Docket Entry 6; Docket Entries dated Nov. 24, 2009, to present.) The parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 8.)

## **Facts**

The facts of the case, as produced at trial and restated by the North Carolina Court of Appeals, are as follows:

> The State presented the following evidence: On 8 July 2004, Detective Duane James ("Detective James") of the Greensboro Police Department was working undercover in the Vice and Narcotics Division. Earlier in the day, Detective James had been contacted by Jose Martinez Figuero ("Figuero"). Detective James had been negotiating narcotics transactions with Figuero for the previous three to four months. Figuero stated that he had twenty pounds of marijuana to sell him for $13,000. Around 7 p.m., Detective James went to the Hidden Lakes Apartments ("the apartment complex") to meet with Figuero.
>
> Prior to arriving, Detective James was informed by officers who were surveilling the apartment complex that they observed a burgundy Honda frequently driven by Figuero. Detective James parked his vehicle at the apartment complex. After a few seconds, Figuero entered the burgundy Honda and parked the vehicle beside Detective James' vehicle. Figuero then entered Detective James' vehicle and asked him if he was ready to make the purchase. Detective James said he was ready. Figuero exited the vehicle, returned to the Honda, popped open the hood, and retrieved a small baggie of marijuana. When

Figuero brought the marijuana to Detective James, he accepted the marijuana, walked it over to another undercover detective's vehicle, then returned to Figuero. Detective James told him the marijuana "looked good" and he wanted to purchase it. Figuero told Detective James to "give [him] a couple of minutes" so he could call his "people" and arrange the transaction. Detective James did not hear back from Figuero until approximately 9:45 p.m. that evening. Detective James contacted Figuero to tell him that the "deal was off" and he was not going to wait around for him any longer. Then Detective James told Figuero that "[i]f you want to do it, you need to be at the BP gas station within the next 10 to 15 minutes."

Detective James arrived at the BP gas station first. Meanwhile, Figuero left the apartment complex in the Honda. A Mitsubishi Eclipse, driven by defendant, left the apartment complex in tandem with Figuero's Honda. Both vehicles arrived at the BP gas station. Figuero exited the Honda, along with a passenger identified as Gerardo Lamos Rios ("Rios"). Rios, Figuero, and Detective James had a short meeting in front of the Honda, and Rios informed Detective James that the marijuana was in the Mitsubishi. Rios and Detective James then walked to the Mitsubishi.

As they approached the Mitsubishi, defendant exited the vehicle, stood at the gas pump, and inserted the gas nozzle into the gas tank. Rios had a conversation with defendant in Spanish, and then defendant left and entered the convenience store. At that time, Rios got into the back seat of the Mitsubishi and asked Detective James to sit inside the vehicle. As he sat in the vehicle, Detective James detected a strong odor of marijuana. Rios tried to pull down the back seat, but was unsuccessful. He then got out of the vehicle, retrieved the keys that defendant had left in the door to the gas tank, re-entered the vehicle and unlocked the top part of the back seat. Rios then was able to pull down a small section of the back seat which allowed access to the trunk area. Rios pulled out a bag of marijuana with a tear in it and showed the bag to Detective James. Detective James then exited the vehicle. At about the same time, defendant returned to the vehicle. Defendant, Rios and Figuero were all arrested. Subsequent testing at the North Carolina State Bureau of Investigation confirmed that the bag contained 20.7 pounds of marijuana.

At the conclusion of the State's evidence, defendant presented the following evidence: Defendant was employed

> as a mechanic and on 8 July 2004, he drove his girlfriend's vehicle, a Mitsubishi Eclipse, to an auto services shop owned by Rios to purchase car parts. When defendant arrived at the shop, Rios asked him to help repair a vehicle that was located at a parking lot. Because Rios did not have a vehicle or a valid driver's license, defendant drove Rios to a parking lot. When they arrived at the parking lot, defendant learned he was expected to help repair a Honda owned by Figuero. As Rios and defendant worked on the Honda, Figuero, whom defendant just met, asked to borrow defendant's vehicle. Defendant agreed and when Figuero returned defendant's vehicle, the Honda was repaired. Rios then told defendant they needed to follow Figuero to his apartment in order to get paid. The three men then drove to Figuero's apartment complex and entered one of the apartments.
>
> After defendant was in the apartment for approximately thirty minutes, Figuero told defendant that they would need to leave and meet a man at a gas station who owed him money and then he would be able to pay defendant for fixing the Honda. When the three men left the apartment, either Rios or Figuero carried a bag. As they approached defendant's vehicle, Rios asked defendant to open the trunk, and defendant was not certain what happened to the bag after he opened the trunk. Defendant was unaware of the contents of the bag.

<u>Salazar</u>, 2008 WL 2415974, at *1-2.

## **Petitioner's Claims**

Petitioner raises two claims in his Petition. First, he asserts that his rights were violated because he was not provided with an interpreter at the time of his arrest and thus did not understand that he had a right to contact the Guatemalan Consulate. Second, Petitioner complains that the trunk of his car was searched without a warrant in violation of his rights under the Fourth Amendment of the United States Constitution.

## **Exhaustion**

Petitioner raised his present claims in his motion for appropriate relief in state court. However, Petitioner has

presented no evidence that he sought appellate review of the trial court's denial of that motion. Failure to exhaust state court remedies, including review by the North Carolina Court of Appeals of collateral claims, precludes this Court from granting relief on unexhausted claims. See 28 U.S.C. § 2254(b)(1). Respondent correctly observes, however, that the Court can deny relief as to unexhausted claims. See 28 U.S.C. § 2254(b)(2).

## Discussion

At least two deficiencies exist as to Petitioner's claim regarding the provision of interpreter-assisted notice of his consular rights. First, Petitioner raised this matter in his motion for appropriate relief and the state court found the claim procedurally barred under state law because Petitioner did not present it on direct appeal. (Docket Entry 5, Ex. 8); N.C. Gen. Stat. § 15A-1419(a)(3) and (b). That holding raises a procedural bar in this Court as well. See Boyd v. French, 147 F.3d 319, 331 (4th Cir. 1998). To avoid this bar, Petitioner must establish both cause for his failure to present these issues on direct appeal and prejudice from any error or, in the alternative, that a fundamental miscarriage of justice occurred (i.e., that the cited errors likely helped cause his conviction despite his actual innocence). See generally Murray v. Carrier, 477 U.S. 478, 485-97 (1986); McCarver v. Lee, 221 F.3d 583, 588-93 (4th Cir. 2000). Petitioner fails to give the cause for his default, allege any prejudice, or claim that

a fundamental miscarriage of justice occurred. For that reason, his first claim is procedurally barred.[1]

Even in the absence of a procedural bar, this claim fails on the merits. To establish a claim of this sort, at a minimum, Petitioner would have to show prejudice to his case. See <u>United States v. Ortiz</u>, 315 F.3d 873, 878, 886-87 (8th Cir. 2002). Petitioner has not even alleged, much less demonstrated, any prejudice. Moreover, it does not appear that a violation of the sort Petitioner has alleged could provide any basis for invalidating an otherwise lawful criminal conviction, even if prejudice resulted. See <u>United States v. Hurtado</u>, 195 Fed. Appx. 132 (4th Cir. 2006).

Petitioner's second claim (regarding the allegedly unlawful search) also fails for multiple reasons. As an initial matter, this claim, like the first claim, was procedurally defaulted. Moreover, as with Petitioner's first claim, no grounds exist to overcome the procedural bar.

Further, Fourth Amendment claims generally cannot be considered on habeas review. See <u>Stone v. Powell</u>, 428 U.S. 465, 481-82 (1976); <u>see also</u> <u>Wright v. West</u>, 505 U.S. 277, 293 (1992); <u>Mueller v. Angelone</u>, 181 F.3d 557, 570 n.8 (4th Cir. 1999); <u>Grimsley v. Dodson</u>, 696 F.2d 303, 304 (4th Cir. 1982). Here, Petitioner certainly had a full and fair opportunity to contest his

---

[1] The fact that Petitioner's claim appears to arise under the Vienna Convention on Consular Relations does not prevent the procedural bar from applying. <u>Sanchez-Llamas v. Oregon</u>, 548 U.S. 331, 352 (2006).

-6-

claim at trial if he wished. Therefore, the Court cannot consider his claim under the rule in Stone.

Finally, the evidence at Petitioner's trial showed that the marijuana in his trunk was located by police, not during any sort of search, but when one of Petitioner's co-defendants voluntarily opened the trunk to show the marijuana to an undercover officer as part of a drug sale. Petitioner points to no contradictory evidence regarding the discovery of the marijuana. These facts give rise to no Fourth Amendment claim. See, e.g., United States v. Rumley, 588 F.3d 202 (4th Cir. 2009)(holding that seizures of evidence in "plain view" do not implicate Fourth Amendment). Petitioner's claim is procedurally barred, barred by Stone, and meritless on its face. It is denied for all of these reasons.

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment (Docket Entry 4) is **GRANTED**, that the Habeas Petition (Docket Entry 1) is **DENIED**, and that this action be, and the same hereby is, **DISMISSED**.

                                      /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                             **United States Magistrate Judge**

September 30, 2010